WAGNER AND DUNBAR, APPELLANTS, v. HARRIS ET AL.

LEGISLATIVE POWERS—MUNICIPAL CORPORATIONS.—The legislative assemblies of Wyoming and other territories, although not in possession of sovereign powers, have authority under various acts of congress to create municipal corporations, and to grant charters to the same.

APPEAL from the Second District Court, Albany County.

A sufficient statement of the case is contained in the opinion of the Court.

*J. W. Kingman*, for appellants, contended that the legislative assembly of a territory not possessing sovereign powers could not create municipal corporations, nor grant them the authority to pass and enforce by-laws and ordinances, levy taxes, and to perform other duties incumbent upon such corporations.

*E. P. Johnson and M. C. Brown*, for appellees, presented the following arguments and citations:

This case comes up from the second district on appeal. Plaintiffs in appeal were plaintiffs below. It is a case in equity, being a bill for an injunction to restrain defendants from exercising their functions as trustees of the town of Laramie City under the charter of said city, passed by the third legislative assembly of the territory. The basis of

the complaint is the alleged illegality of the legislative action in granting the charter, by reason of its being the exercise of power not possessed by the legislature under the laws of congress and an act in violation of those laws.

That the action of the defendants, under the charter as trustees of said city, in levying taxes, making ordinances, creating a police, etc., are unauthorized by law and are injurious and oppressive to the people. On that account and for that reason it is submitted by defendants:

I. That the bill does not seek to have any specific or particular act or threatened act enjoined as one calculated to work irreparable injury or cast a cloud upon real estate, or as coming under any special head of equitable jurisdiction, but simply seeks to stop the whole machinery of the municipal government of Laramie City, for the reason that the legislature exceeded its power in calling it into existence. And the acts complained of in the bill are set out to invoke the protection of a court of equity in favor of complainants and all those in whose behalf they appear, on the theory that they are injurious and should be restrained on account of their illegality, and their illegality is based on the alleged illegal action of the legislature. Now, if it be true that the act of the legislature was wholly void and that all the pretensions, actions, and doings of the defendants as trustees are absolutely without authority and void, then it is only necessary for that allegation to appear on the face of the bill to make it necessary for the court to refuse the relief and dismiss the bill for want of equity, as there is an adequate remedy at law. If what is stated is true, defendants and all their agents are simple trespassers in all matters complained of, and remedy at law is complete: High. on Injunc., sec. 354; *Blake* v. *Brooklin,* 26 Barber, 101; Hill. on Injunc., sec. 23, p. 458 *et seq.;* 1 Ohio St. 59; *Mechanics* v. *Debolt,* 25 N. Y. 312; 3 Ohio St. 1; 2 Dill. on Mun. Corp., secs. 727, 770.

II. It is, however, claimed that the legislature, in granting the charter, violated the act of congress approved March

2, 1867, as also the organic act of the territory. The act of March 2, 1867, in express terms refers only to private corporations and special privileges to associations of citizens for any purpose, and has no reference to municipal corporations: 14 Stats. at Large, 426. If there was any doubt on that point it would be dispelled by the amendment to that act: 17 Stats. at Large, 390. It is a sufficient answer to the position that the act of the legislature is in conflict with the organic act, to refer to Dill. on Mun. Corp., sec. 18, and cases there cited.

III. Should it be claimed or argued that the officers of the corporation have acted illegally, or failed to act in conformity with the authority conferred by a valid charter (although it is not conceded that such a question arises in this case), it may be answered that there is a remedy by *mandamus* or *certiorari*, or other action at law, to compel a compliance with the provisions of the charter and ordinances: 1 Dill. Mun. Corp., secs. 665, 751, 752, 739 and 741.

By Court, CAREY, J. This was a bill of complaint filed in the district court, by complainants, appellants in this court, praying that William Harris, J. H. Finfrod, R. Galbraith, James Vine and T. J. Webster (trustees of Laramie city), defendants, their agents, attorneys, solicitors and officers might be perpetually enjoined from proceeding further to act as a corporation (under an act of the third legislative assembly of Wyoming, approved December 12, 1873, entitled " an act to incorporate Laramie city"), to make laws, by-laws or ordinances, or to affix penalties thereto, or to assess taxes, or to attempt to collect the same, or to contract debts, or issue warrants or promises to pay, or collect licenses, or issue warrants in civil cases, and imprison parties for non-payment of judgments therein, and especially from attempting to collect the tax of ten mills on the dollar assessed on the personal property of the town of Laramie for the year 1874–1875. Though various questions were incidentally presented in the court below, it appears from

the bill of complaint and the decision filed, that the only questions relied on and considered by the court were those that went to the legality of the Laramie city government, under the law incorporating said city: Laws 1873, 201 *et seq.* We will consider these questions as follows:

1. Is the establishment of a municipal corporation a rightful subject of legislation?

2. Is the authority to establish a municipal corporation vested in the territorial legislature? If so, is the statute incorporating the city of Laramie consistent with the organic act of the territory, the constitution of the United States, and the laws of the United States applicable to the territory?

Upon the first of these questions there can be no doubt. The creation of municipal corporations has been recognized as a rightful subject of legislation by the supreme court of the United States, and we believe by the highest courts of almost every state of the union. Probably there is not a state but what the legislature of which has from time to time exercised such powers undisputed. In some of the states these corporations are created under general laws, while in other states they are created by special charters. In England, since the passage of the municipal corporation act in 1835, municipal corporations have been the creatures of legislative enactments; and in this country, says Judge Dillon, the proposition which lies at the very foundation of the laws of corporations, is that all corporations, public and private, exist and can exist only by express legislative enactment, creating or authorizing the creation of the corporate body: Dillon on Municipal Corporations, sec. 17 *et seq.*

We now come to the consideration of the question whether the authority to create municipal corporations is vested in the territorial legislature. It is no longer doubted that over all territory acquired by treaty or conquest congress has exclusive and universal power, and their legislation is subject to no control, save treaty stipulations and

personal rights and rights of citizenship guaranteed by the constitution. ˚ Such territory is not within the jurisdiction of any state, and is necessarily under the jurisdiction of the United States, otherwise it would be without any government at all: *Amer. Ins. Co.* v. *Carter*, S. C., 1 Pet. 511; *Dred Scott*, 19 How. U. S. 393; 1 Kent, 384; Story's Const., 1322 *et seq.*

Congress possessing the power of sovereignty may enact whatever form of government in the territories they deem best. It is wholly in their discretion what powers—legislative, judicial and executive—shall be conferred upon a territorial government. This discretion of congress has been exercised with wisdom and liberality, and they have from time to time conferred more extended powers to the people of the territories. In the organization of the territory northwest of the Ohio river, the legislative power was vested temporarily in the governor and judges of said territory. In the organization of the territory of Orleans, which became the state of Louisiana, the legislative power was vested in the governor and a council, appointed by the president. Until the organization of the territory of Wisconsin various modes were adopted for the several territories created. The Wisconsin organic act appears to have been the matured system for the government of territories, as all territorial organic acts enacted since are but copies of the Wisconsin act. The whole legislation of congress in reference to the territories shows that the policy and theory of congress in the organization of territories have been to leave all the powers of self-government with the people of such territories, consistent with the supreme and supervisory power of the general government, and to admit such territories as soon as they possessed the requisite constitutional requirements as states, on an equal footing with the original states: Cooley's Cons. Lim. 31; *Clinton* v. *Englebrecht*, 13 Wallace U. S. R. 434.

After a careful examination, we find that the restrictions placed upon the legislative power of this territory are as

few as those placed upon the legislative powers of most of the states of the union. The sixth section of the organic act of the territory provides, "That the legislative power of the territory shall extend to all rightful subjects of legislation consistent with the constitution of the United States and the provisions of this organic act; but no law shall be passed interfering with the primary disposal of the soil; no tax shall be imposed upon the property of the United States, nor shall lands or other property of non-residents be taxed higher than the lands or other property of residents, nor shall any law be passed impairing the rights of private property, nor shall any unequal discrimination be made in taxing different kinds of property, but all property shall be taxed in proportion to its value."

Congress has from time to time enacted certain general laws in reference to the territories, among which are laws in reference to slavery and polygamy in the territories, and a statute providing that the legislative assemblies of the several territories of the United States shall not grant private charters or special privileges, but that they may by general incorporation acts permit persons to associate themselves together as bodies corporate, for mining, manufacturing, and other industrial pursuits. We are unable to find any prohibition in the organic act, or other acts of congress, or in the constitution of the United States, upon the legislative assembly of this territory in creating municipal corporations: 14 Statutes at Large, 426. By section fifteen of the organic act, these laws are extended to this territory. We are referred to the act of congress prohibiting the legislature from granting private charters, etc., but this act does not bear upon the question under consideration, as the corporation of Laramie city is a public corporation.

Again, it is solemnly argued that a territory possessing no sovereign power cannot create municipal corporations; that the board of trustees of said Laramie city are authorized to exercise legislative powers which are by the organic act vested in the legislative assembly and governor of the terri-

tory. While the making of ordinances and by-laws by the trustees of said city may be the exercise of a certain kind of legislative power, we do not consider it the exercise of any part of the legislative power vested in the legislative assembly and governor of the territory; nor do we consider that it requires sovereign power to create a public corporation, any more than a private one; and that a territorial legislature did possess the power to create private corporations before the passage of the act of March 2, 1867, (14 Statutes at Large, 426), is recognized by said act, and was expressly decided by the supreme court of the United States in the case of *Vincennes University* v. *Indiana,* 14 Howe, 268. The same act of March 2, 1867, does not prevent the existence of private corporations in the territories, but it provides that they shall be organized under general laws and not created by private charters. We do not see how the question of sovereignty can arise in the determining of the questions presented. The powers of the legislature are such as are conferred by congress. Congress has conferred upon the territorial legislature the power to legislate on all rightful subjects of legislation, with certain restrictions and exceptions, and the legislative power to create municipal corporations does not fall within the restrictions and exceptions.

We cannot see why the same rules in determining what are rightful subjects of legislation should not apply in the territories that apply in the states. In a state a legislature can legislate upon all rightful subjects of legislation consistent with the constitution of such state and the constitution of the United States, and in a territory of the organic and other acts of congress. By an examination of the constitutions of a number of the states we find substantially the same provisions in reference to the legislative powers of such states as are contained in the organic act of this territory in reference to the legislative powers of such territory. The powers of such states to create municipal corporations, with officers authorized to make by-laws and or-

dinances, has not been doubted; nor has it been held that such officers exercise any portion of the legislative power vested in such state legislatures: Dill. on Mun. Corp. sec. 18; 2 Kansas, 445; 2 Id. 454; 1 Colorado, 323.

Again, it is within the power of congress to annul any territorial law. While congress has time and again exercised this power, we have been unable to find an instance where congress has annulled a law of a territory creating a municipal corporation. Congress has by various acts recognized municipal corporations in the territories, and by the passage of a recent act granting certain lands to the city of Cheyenne for water purposes, recognized the corporate authorities of said city. It is, therefore, no unreasonable inference that the power of territorial legislatures to create municipal corporations is recognized and approved by congress.

The remaining question which we are called upon to consider is, whether the charter in question is consistent with the provisions of the organic act. While the charter is ambiguous and uncertain in many respects, most of its provisions are consistent with the organic act; but we do not feel called upon under the record to construe its various provisions. The sixteenth subdivision of section 18 of said charter provides that the by-laws, ordinances and regulations of said city shall not be repugnant to the laws or organic act of the territory, and if this provision is violated a court of equity or law will furnish relief or a remedy when the matter is properly presented to the court.

Thus, that the passage of the charter was unwise and impolitic we are not called upon to decide. The courts will not declare a law or any portion of a law unconstitutional unless its opposition to the fundamental law is clear and plain. To justify a court in pronouncing an act of the legislature to be unconstitutional the incompatibility must not be speculative, argumentative, or to be found only in hypothetical cases or in supposed consequences; it must be clear, decided and inevitable, such as presents a contradiction at

once to the mind, without straining either by forced meanings or too remote consequences: 7 Pet. 633; 2 McLane, 195.

For the foregoing reasons the decree of the district court is affirmed.